DEPARTMENT OF TAXATION, Respondent, vs. MILLER, Appellant.

*November 4, 1941—February 10, 1942.*

For the appellant there were briefs by *Wood, Warner & Tyrrell,* attorneys, and *John K. Wood* and *Kenneth F. Webster* of counsel, all of Milwaukee, and oral argument by *Mr. Wood* and *Mr. Webster.*

For the respondent there were briefs by the *Attorney General* and *Harold H. Persons,* assistant attorney general, and oral argument by *Mr. Persons.*

The following opinion was filed December 2, 1941:

FOWLER, J.   The assessor of incomes of Milwaukee county imposed in 1932 an emergency relief surtax against Clara A.

Miller on her 1931 income. She paid this tax. Thereafter in proceedings duly had an additional tax of $1,763.09 was imposed by the assessor. This tax was also paid. The taxpayer filed with the assessor a petition for a refund of these payments. The assessor denied the refund. The taxpayer appealed to the Wisconsin board of tax appeals. The board reversed the order of the assessor and ordered a refund. The Wisconsin Department of Taxation brought action under sec. 73.015 (2), Stats., in the circuit court for Milwaukee county to review the order of the board. The circuit court reversed the order of the board and sustained both taxes imposed by the assessor of incomes. The case is an appeal from the circuit court order.

The facts are stipulated. They are in part summarized as follows : During the year 1931 the taxpayer owned securities worth somewhere between one and three million dollars. During that year she made many changes in her invested securities, selling some and purchasing others. The total volume of such manipulations involved purchases and sales aggregating, respectively, $765,306.89 and $340,536.55. Her purpose in so manipulating her securities was to better her holdings and thus to increase her income. In this sense it was, as she claims, to make money. On the basis of differences between purchase and sales prices of securities sold during the year, her losses exceeded her gains in the aggregate of $81,141.87. She claims she is entitled to deduct this sum from the tax base upon which her emergency relief surtax was computed. She was allowed such deduction from her regular income tax base. Whether she is entitled to such deduction in computing the tax involved, depends on the meaning of the statute imposing that tax.

The validity of the statute imposing the tax involved is not in question. The only question involved is whether under par. (b) of sec. 4 (2) of ch. 29, Laws of Sp. Sess. 1931–32, the provisions of the general income tax law relating to "gains

or losses on the sale or disposition of stocks, bonds and other securities" is applicable. Par. (b) declares that the provision relating to such "gains and losses" shall not be applicable "unless the property is held by the taxpayer in the course of his regular trade or business."

It seems to us that whether the judgment of the circuit court should be affirmed may be based on an item of the stipulated facts. Attached to and made a part of the stipulation is a final summary in two columns, headed and concluded as follows:

| "A<br>Corrected Assessment if Mrs. Miller is held to have been a dealer in securities—Refund due $3,916.85." | "B<br>Corrected Assessment if Mrs. Miller is held *not* to have been a dealer in securities—Additional tax due $1,763.09." |
|---|---|

This item shows that it was stipulated that the case hinged on whether Mrs. Miller was a dealer in securities. The stipulation is to the effect that the clause in the statute involved: "or unless the property is held by the taxpayer in the course of his regular trade or business," means unless the taxpayer holds the securities as a dealer in securities. Holding securities in course of the taxpayer's regular course of trade or business in fact does make and was in effect stipulated to make the holder a dealer in securities. Being a dealer implies buying to hold for sale. It means selling to customers who apply to purchase and whom the dealer solicits to buy. A dealer in securities holds securities for sale, and one who applies may purchase whatever the dealer holds. Mrs. Miller did not buy securities for the purpose of holding them for sale. She had no customers. No one applied to her to sell. She solicited no one to buy. She had no dealing with customers at all, or with anyone to whom her securities were sold. She only directed a broker to buy on the stock exchange what specified securities she wanted to buy and to sell what she wanted to sell. This did not constitute her any more a dealer in securities

than one is a dealer who buys or sells a single security. The only difference between one who sells a single security that he holds and buys another and one who sells many that he holds and buys many others, is only in the number of his transactions, not in the nature of his transactions or their effect toward making him a dealer in securities. As the item of the stipulation tells the whole story we see no need to consider makeweights or counterweights. Neither affects the result. Taking definitions of "regular trade or business" or "dealer," whether law definitions or ordinary dictionary definitions, does not help, as one may pick and choose as he will to support whatever view he takes. There is nothing ambiguous in the statute. Every word in it has a universally understood meaning, and giving to every word such meaning we are unable to perceive that the securities of the defendant were held by Mrs. Miller "in the course of his [her] regular trade or business." The simple fact is Mrs. Miller did not follow or conduct "a trade or business." To say she did would be to quibble.

Several federal cases are cited by appellant as taking a contrary view. The last United States supreme court income tax case that construes the phrase "trade or business" is *Higgins v. Commissioner of Internal Revenue,* 312 U. S. 212, 61 Sup. Ct. 475, 85 L. Ed. 783, which sustains the view here adopted. It construes the statutory phrase, "carrying on a trade or business."

The appellant urges that it was recognized in *Appeal of Van Dyke,* 217 Wis. 528, 259 N. W. 700, that the taxpayer "was allowed his deductions because he was within the class of persons covered by the language 'unless the property is held by the taxpayer in the course of his regular trade or business.'" Language so indicating was not discovered in a cursory examination of the opinion. We do not say that it is not there, but we do say that if counsel refer in their brief to language hidden somewhere in the body of a twenty-two-page opinion they should indicate the page where the statement referred

to may be found. At any rate, the point that the losses the taxpayer was seeking to deduct were sustained "in the course of his regular trade or business" was not contested or litigated in the *Van Dyke Case*.

Counsel contend that the statute has been generally construed by the taxing authorities of the state to mean that a taxpayer sustaining losses in the course of buying and selling securities as did the plaintiff is entitled to deduct losses from the tax base of the emergency surtax involved. Six decisions of the tax commission and two of the board of tax appeals (its successor) are cited as holding the taxpayer engaged in a trade or business and four of the tax commission are cited as holding that he was not. The facts are not stated. In this situation we can give these decisions no consideration, without devoting more time to research than we have to give. At any rate, unless long continued, substantially uniform, and without challenge by the government authorities and the courts, an administrative practice should not be assumed as settling the interpretation of a statute. *Higgins Case, supra.*

*By the Court.*—The order of the circuit court is affirmed.

The following opinion was filed February 10, 1942:

FOWLER, J. (*on motion for rehearing*): A rehearing is asked because, as is claimed: (1) The opinion is based upon a single item of the stipulated facts contained in captions stating that if the taxpayer is held by the court to have been "a dealer in securities" a stated amount paid as tax should be refunded, and if held not to be such "dealer" an additional tax of a stated amount was due from her. See captions, *ante,* p. 510. (2) The opinion erroneously states that the constitutionality of the statute involved is not in issue, and the court failed to pass upon its constitutionality. See *ante,* p. 509.

(1) That the court gave to the phrase "dealer in securities" in the caption a broader meaning than did the taxpayer may

be true. But it does not follow that the court based its decision solely upon its interpretation of the meaning of that term in the caption. On the contrary it seems clear from the opinion that the court considered the facts relating to the method of the taxpayer's handling of her securities and the extent of the attention she gave to the handling of them. It is also clear that the court considered that this method and attention did not constitute her one conducting a business as a "dealer in securities," and that one must be such in order to be entitled to exclusion from the emergency tax statute as one who holds property "in the course of his regular trade or business." This appearing, the decision must stand regardless of what the taxpayer considered the phrase "dealer in securities" in the caption to mean. What the words of the statute mean is what rules the decision of the point under consideration, not what the phrase in the caption means. What the statute means is a matter of law for the court to determine.

(2) The statement in the opinion that the constitutionality of the statute, sec. 4 (2) of ch. 29, Laws of Sp. Sess. 1931–32, was not involved was based upon the fact that the taxpayer conceded that if she was not engaged in conducting a "trade or business" within the meaning of par. (b) of the statute, she owed an additional tax of $1,000 plus. If par. (b) were unconstitutional she would not of course be owing any additional tax. The inference that constitutionality was not involved was aided by the ruling that the statute comprising par. (b) is valid in the *Appeal of Van Dyke,* 217 Wis. 528, 259 N. W. 700, cited in the opinion. The whole effort of the taxpayer in the *Van Dyke Case* was to have the emergency tax statute held unconstitutional and every conceivable method of attack was made upon it. It is true that one basis of attack here made while there made was there not considered because the taxpayer was not in a position to assert it. *Van Dyke Case,* p. 546. The gist of that attack is that, if construed as the taxing authorities contend it should

be, par. (b) is unconstitutional because it would impose a tax on "gross receipts," and only "net receipts" are comprised within "income," as held in *Ed. Schuster & Co. v. Henry,* 218 Wis. 506, 261 N. W. 20. The receipts involved in the *Schuster Case* were those of a mercantile business in conducting which expenses were necessarily incurred, and would have to be deducted to get at the income the business yielded. We do not perceive that in handling her securities the instant taxpayer incurred any expense. Her "gross receipts" were "net receipts" and therefore "income." If there were any expenses incidental to her shifting of her securities, the record does not show it. It rather shows, or at least implies, that any such expenses were deducted, for the "sale price" of her securities is not given but the "proceeds." "Proceeds" means "net proceeds,"—that is what is realized after expenses are deducted. 34 Words and Phrases (perm. ed.), 132.

The motion for rehearing is denied without costs.