CUDAHY, Appellant, vs. DEPARTMENT OF TAXATION, Respondent.

*February 5—March 4, 1952.*

For the appellant there were briefs by *Whyte, Hirschboeck & Minahan* of Milwaukee, and oral argument by *Herbert C. Hirschboeck*.

For the respondent there was a brief by the *Attorney General* and *Harold H. Persons,* assistant attorney general, and oral argument by *Mr. Persons.*

CURRIE, J.    Two questions are presented on this appeal: (1) Whether the taxpayer, Cudahy, was authorized by sec. 71.04 (4), Stats., then in effect, to deduct from the gross income listed in his individual tax returns for the four years of 1942–1945, inclusive, the amount of dividends received by him from Northern in computing his net taxable income; and (2) if the taxpayer were not so entitled to deduct such dividends, whether the Wisconsin Department of Taxation is estopped from assessing the additional income tax due against taxpayer by reason of his having deducted said dividends.

Sec. 71.04, Stats. 1945, provided in part as follows:

"Persons other than corporations, in reporting incomes for purposes of taxation, shall be allowed the following deductions: . . .

"(4) Dividends, except those provided in section 71.02 (2) (b) 2 and 3 [distributions from pre-1911 earnings and liquidating dividends], received from any corporation conforming to all of the requirements of this subsection. Such corporation must have filed income-tax returns as required by law and the income of such corporation must be subject to the income tax law of this state. The principal business of the corporation must be attributable to Wisconsin and for the purpose of this subsection any corporation shall be considered as having its principal business attributable to Wisconsin if fifty per cent or more of the entire net income or loss of such corporation after adjustment for tax purposes (for the year preceding the payment of such dividends) was used in computing the average taxable income provided by

chapter 71, except that deductibility of dividends received in the year 1926 shall be governed by the assessment of the income of the year 1925. . . ." (This subsection was the same in the 1941 and 1943 statutes.)

An analysis of sec. 71.04 (4), Stats. 1945, discloses that, in order for an individual taxpayer to be entitled to deduct dividends from gross income in arriving at net taxable income, there are three requirements on the part of the corporation which paid the dividends which must exist, all three of which requirements must concur, and the failure to meet any one of the three will be fatal to taxpayer's right to deduct the dividends. These three requirements are:

(1) The corporation must have filed income-tax returns as required by law.

(2) The income of such corporation *must be subject to the income tax law* of this state.

(3) The principal business of the corporation must be attributable to Wisconsin.

Northern did file Wisconsin corporation income-tax returns for the four years in question and taxpayer contends that the first requirement of sec. 71.04 (4), Stats., *supra,* has therefore been met by the corporation. The Department of Taxation contends that the corporation was not "required by law" to file such returns. For the basis of this opinion, we are assuming, but not deciding, that taxpayer's contention in this respect is correct, and pass on to the second requirement.

As we view it, the vital issue in the case is whether the income of Northern for the four years in question was *"subject* to the income tax law of this state." Just what did the legislature intend when it used the word *"subject?"*

The taxpayer maintains that the words *"subject to the income tax law of this state"* has reference to a general class of corporations and not to the income of a particular corporation such as Northern, and therefore if Northern falls in such general class it is immaterial if it has any income which

is taxable by Wisconsin. In support of such argument taxpayer cites the provisions of sec. 71.01, Stats. 1941, 1943, and 1945, whereby the state taxes "every nonresident of the state, upon such income as is derived from property located or business transacted within the state;" and then argues that even if the corporate stocks and other intangibles owned by Northern are deemed to have their situs in Delaware, the corporation's domicile, nevertheless, if Northern transacted any business in Wisconsin it was subject to Wisconsin income tax within the meaning of sec. 71.04 (4), Stats. 1941, 1943, and 1945, and whether it had any taxable income or sustained a loss is immaterial. The fallacy in such argument lies in the fact that the words "income as is derived from . . . business transacted within the state," quoted from sec. 71.01, *supra,* has reference to income of a type made taxable by the ensuing provisions of our income tax statutes. The holding of corporate meetings by Northern, collecting dividends, looking after investments, etc., in the state were not in themselves activities which produced income which was taxable by Wisconsin if such ensuing provisions then in effect imposed no income tax on the income received by Northern on its investments.

In our attempt to arrive at the proper construction of the phrase "the income of such corporation must be subject to the income tax law of this state" appearing in sec. 71.04 (4), Stats. 1941, 1943, and 1945, it is helpful if we ascertain the legislative intent of the subsection as a whole. There can be little doubt that the general underlying purpose of the subsection was to avoid double taxation by exempting from taxation dividends of a corporation paid out of corporate earnings which were subject to Wisconsin income tax regardless of whether the corporation was a Wisconsin corporation or a foreign corporation transacting business in the state. Surely the legislature never intended to give the exemption resulting from deductibility of dividends to stockholders of

a corporation which had no income subject to Wisconsin income tax. While it is true that the subsection does not require that any fixed percentage of the corporate income be subject to Wisconsin income tax, it is reasonable to assume that the legislature thought that the third requirement, that the corporation must have its principal business attributable to Wisconsin, coupled with the fifty per cent of net income or net loss test, would prevent the benefit of deductibility being bestowed upon the stockholders of a corporation whose income subject to Wisconsin income tax was anything less than a substantial part of the whole.

In the light of these considerations we conclude that the words of the subsection, *"the income of such corporation must be subject to the income tax law of this state"* means that the corporation must have income which was required to be included as gross income in its Wisconsin corporate income-tax return which it was required to file with the department, regardless of whether or not there was net taxable income, or a net loss, for the tax year in question. This requirement of having income subject to tax was not met by Northern including as gross income in the Wisconsin returns, which it filed for the years in question, such income from intangibles as dividends from Cudahy Brothers Company and Charles Hess Sausage & Provision Company, *if such dividends were not actually subject to Wisconsin income tax under the income tax statutes then in effect.*

It may be urged that this construction of the statute is directly contrary to the legislative intent of avoiding double taxation of corporate earnings because it may result in the taxpayer having to pay income tax on dividends received from Northern which represent a distribution of earnings of Cudahy Brothers Company and Charles Hess Sausage & Provision Company on which such two corporations had already paid a Wisconsin corporation income tax. Unfortunately, from the standpoint of appellant taxpayer, sec.

71.04 (4), Stats. 1941, 1943, and 1945, in imposing its three corporate requirements for deductibility of dividends to individual stockholders, did not differentiate between operating companies and holding companies. It would have been a simple matter for the legislature to have provided that dividends, which were paid by a holding company to its stockholders representing the proceeds of dividends paid by an operating company to the holding company, were deductible to the same extent as if they had been paid directly from the operating company to the stockholders of the holding company. This the legislature did not see fit to do. Deductions and exemptions from gross income are matters of purely legislative grace, and provisions permitting them are to be strictly construed against persons claiming their applicability and in favor of the tax authority. *Comet Co. v. Department of Taxation* (1943), 243 Wis. 117, 9 N. W. (2d) 620.

It is conceded that all of the income of Northern has been derived from intangible personal property. It being a Delaware corporation the situs of such income for income-tax purposes was Delaware under the well-accepted maxim *"mobilia sequuntur personam,"* which maxim found legislative sanction in sec. 71.02 (3) (c), Stats. 1945, and which provided:

". . . All other income, including royalties from patents, income derived from personal services, professions, and vocations and from land contracts, mortgages, stocks, bonds, and securities or from the sale of similar intangible personal property, *shall follow the residence of the recipient,* except as provided in section 71.095." (This subsection was the same in the 1941 and 1943 statutes.)

Under the provisions of sec. 71.02 (3) (c), Stats., *supra,* the income of Northern would be taxable by Delaware and not by Wisconsin. Taxpayer concedes that, inasmuch as Northern is domiciled in Delaware (the state of its incorporation), Delaware has the constitutional right to tax all of the income of the corporation, including income from secu-

rities physically located in Wisconsin, but contends that Wisconsin also has the right to tax the income of Northern under the provisions of sec. 71.02 (3) (e), Stats. 1941, 1943, and 1945, which provided:

"A foreign corporation whose principal business is carried on or transacted in Wisconsin shall be deemed a resident of this state for income-tax purposes, and its income shall be determined and assessed as if it were incorporated under the laws of Wisconsin, notwithstanding its domicile is elsewhere."

The department contends that sec. 71.02 (3) (e), Stats., *supra,* was declared by this court to be wholly unconstitutional *ab initio* in *Newport Co. v. Tax Comm.* (1935), 219 Wis. 293, 261 N. W. 884, and that such determination was adhered to in the case of *Briggs & Stratton Corp. v. Department of Taxation* (1946), 248 Wis. 160, 21 N. W. (2d) 441. Taxpayer, on the other hand, urges that the *Newport Case* wrongly held that such statute was unconstitutional in the light of the later decision of the United States supreme court in *First Bank Stock Corp. v. Minnesota* (1937), 301 U. S. 234, 57 Sup. Ct. 677, 81 L. Ed. 1061, 113 A. L. R. 228, and the decision of the Federal circuit court of appeals of the Tenth circuit in *Chestnut Securities Co. v. Oklahoma Tax Comm.* (1942), 125 Fed. (2d) 571 (Cert. den. 316 U. S. 668, 62 Sup. Ct. 1035, 86 L. Ed. 1743); and that in any event, even though the statute may have been unconstitutional as applied to the fact situations in the *Newport Co.* and *Briggs & Stratton Corp. Cases,* it is not unconstitutional as applied to the fact situation in the instant case.

In *Newport Co. v. Tax Comm., supra,* the taxpayer was a Delaware corporation licensed to do business in Wisconsin and was engaged in the manufacture of dyestuffs, chemicals, and wood distillates, with factories both in and without Wisconsin, and the issue was as to whether a certain gain

realized by it from the sale of certain shares of stock of Milwaukee Coke & Gas Company, a Wisconsin corporation, was subject to income tax by the state of Wisconsin, the profit on such sale being in excess of $2,000,000. The stock certificates at no time had been kept in Wisconsin, part of them being held by a trust company in Cleveland, Ohio, and part of them being kept in a safe-deposit box in Chicago. On the basis of the apportionment formula contained in sec. 71.02 (3) (d), Stats. 1927, over seventy per cent of the corporation's business was transacted in Wisconsin. The tax commission contended that under sec. 71.02 (3) (e), Stats. 1927, which provided that a foreign corporation whose principal business is carried on in Wisconsin shall be deemed a resident of the state for income-tax purposes, the state had the right to tax the profit on the sale of the Milwaukee Coke & Gas Company stock. The court, however, held that it was bound by the determination of the United States supreme court with respect to the taxing power of the state over foreign corporations transacting business therein; and that under the decisions of the United States supreme court, sec. 71.02 (3) (e), Stats. 1927, was unconstitutional and void. In its decision the court said (p. 306):

"It thus appears to be the rule, established by the United States supreme court, and heretofore recognized by this court, that as to nonresidents there may be no imposition of income taxes upon income derived from property or business located without the state; that the situs of such intangibles as corporate stock is the domicile of the owner; that since property of this character, owned by a foreign corporation, is not located within the state of Wisconsin, it is not subject to an income tax levied by this state. So far as the cases leave the subject, the state of Delaware may tax this taxpayer upon its entire income. Wisconsin may tax it upon income derived from property located within the state. To this extent multiple taxation is permitted, but this represents the limits so far established."

In *Briggs & Stratton Corp. v. Department of Taxation,* *supra,* the state sought to tax the taxpayer corporation on income received during the years 1938, 1939, and 1940, from certain securities owned by it. The corporation was a Delaware corporation licensed to do business in Wisconsin and its principal business was the manufacture of automobile hardware and small motors. It owned and operated two manufacturing plants in the city of Milwaukee and did no manufacturing business elsewhere. Its principal and executive offices were in the city of Milwaukee. Ninety-nine per cent of its tangible property was located in Wisconsin, and forty per cent of its sales were treated for income-tax purposes as being made through or by offices or agencies located in Wisconsin. The securities had been purchased from surplus funds of the corporation and were at all times kept in a safe-deposit box in a bank in Milwaukee. The meetings of directors at which the purchase of securities was authorized or approved were all held in the city of Milwaukee. In the briefs submitted in behalf of the Department of Taxation the decisions of *First Bank Stock Corp. v. Minnesota* (1937), 301 U. S. 234, 57 Sup. Ct. 677, 81 L. Ed. 1061, 113 A. L. R. 228, and *Chestnut Securities Co. v. Oklahoma Tax Comm.* (1942), 125 Fed. (2d) 571, were cited, and this court was urged to reconsider its decision in the *Newport Case,* the department claiming such case had been erroneously decided. The department also contended that, even though sec. 71.02 (3) (e), Stats. 1927, had been held invalid as applied to the facts in the *Newport Case,* the facts in the *Briggs & Stratton Case* were distinguishable in that the actual physical situs of the securities in the latter case was in Wisconsin.

However, this court in its decision in *Briggs & Stratton Corp. v. Department of Taxation, supra,* adhered to its former determination in the *Newport Case* that sec. 71.02 (3) (e), Stats., *supra,* was invalid and void. As

one of the reasons for such conclusion the court pointed out that the legislature subsequent to the decision of the *Newport Case* had in 1939 enacted sec. 73.015 (6), Stats., the last clause of which provided:

". . . If the circuit court construes a statute adversely to the contention of the tax commission, the commission shall be deemed to acquiesce in the construction so adopted unless an appeal to the supreme court is taken, and the construction so acquiesced in shall thereafter be followed by the commission."

The decision pointed out that subsequent to such enactment the circuit court for Dane county had rendered a decision and judgment in the case of Aluminum Goods Manufacturing Company v. Tax Comm. on February 6, 1941, which followed the decision of this court in the *Newport Case* in holding sec. 71.02 (3) (e), Stats., void and that the state was without power to tax income from intangibles of the taxpayer, the Aluminum Goods Manufacturing Company; and that the tax commission failed to appeal from the judgment of the circuit court. In its decision in the *Briggs & Stratton Case* this court stated (p. 164):

"The acceptance by the legislature of the statute as construed disposes of any questions of public policy that may be involved."

The *Briggs & Stratton Case* was decided by this court in 1946. At its 1947 session, the legislature first enacted ch. 318, Laws of 1947, which was a comprehensive revision of the state's income tax laws sponsored by the Department of Taxation, and sec. 71.02 (3) (e), Stats. 1945, was renumbered sec. 71.15 (6). Thereafter, at this same session, the legislature apparently became apprised of the decisions of this court holding such statute to be unconstitutional, because it included new sec. 71.15 (6) among the *"unconstitutional provisions"* which were repealed by ch. 557, Laws

of 1947. Such action of the legislature is subject to no other interpretation than that it considered the decisions of this court as having held that sec. 71.02 (3) (e), Stats. 1945, was wholly and totally unconstitutional and void, thus affording no basis for the argument that such statute might be unconstitutional as applied to the fact situation with respect to income from intangibles of one foreign corporation, and valid as to different fact situations with respect to income from intangibles of another foreign corporation.

In 1 Cooley, Const. Lim. (8th ed.), p. 367, the author points out that the general rule is to permit an unconstitutional law to operate as far as it can but the exception to such rule occurs in those cases:

". . . where it is evident, from a contemplation of the statute and of the purpose to be accomplished by it, that it would not have been passed at all, except as an entirety, and that the general purpose of the legislature will be defeated if it shall be held valid as to some cases and void as to others. . . ."

In *United States v. Ju Toy* (1905), 198 U. S. 253, 262, 25 Sup. Ct. 644, 49 L. Ed. 1040, Mr. Justice HOLMES expressed the rule as follows:

". . . a single section, accomplishing all its results by the same general words, must be valid as to all that it embraces, or altogether void."

The legislature, by its acceptance of this court's determination in *Briggs & Stratton Corp. v. Department of Taxation, supra,* that sec. 71.02 (3) (e), Stats., *supra,* was wholly void, and its repeal of the same would seem to render moot the argument advanced by appellant taxpayer that this court, in its decision in the *Newport Case,* erroneously held that Wisconsin lacked the constitutional power to enact a statute ascribing a business domicile in the state by legislative fiat to a foreign corporation transacting its principal business in

the state so as to permit the state to tax the income of such a corporation realized on intangibles on the basis of such income following such business domicile in Wisconsin.

In view of our determination that sec. 71.02 (3) (e), Stats. 1941, 1943, and 1945, is wholly void, there is no other statutory provision in the income tax laws of the state which imposes a tax on the income of Northern realized from its intangibles, and the provision of sec. 71.02 (3) (c), Stats. 1941, 1943, and 1945, is operative causing such income to follow the residence of Northern in Delaware, as the state of its incorporation. There, therefore, was no income of Northern which was *"subject to the income tax law of this state"* as required by the provisions of sec. 71.04 (4), Stats. 1941, 1943, and 1945, and the dividends received by taxpayer from Northern for the four years in question were therefore not deductible in determining the net taxable income of taxpayer.

Having determined that there was no income of Northern subject to income tax in Wisconsin, it becomes unnecessary to pass on the question of whether the *"principal business"* of Northern was *"attributable to Wisconsin"* within the meaning of sec. 71.04 (4), Stats., *supra.* The department contends that the words *"principal business"* in sec. 71.04 (4), *supra,* have reference to activities which produce business income as distinguished from income from intangibles and cite *Tyson v. Department of Taxation,* 2 Wis. B. T. A. 380; *Department of Taxation v. Miller* (1942), 239 Wis. 507, 300 N. W. 903, 2 N. W. (2d) 362; and *Higgins v. Commissioner* (1941), 312 U. S. 212, 61 Sup. Ct. 475, 85 L. Ed. 783, in support of such contention.

In the instant case there was a stipulation of facts between the parties in which appeared the following statement:

"During 1941 through 1945 and until after the decisions of the Wisconsin supreme court on January 8, 1946, in *Briggs & Stratton Corp. v. Department of Taxation,* 248

Wis. 160, and *Kimberly-Clark Corp. v. Department of Taxation,* 248 Wis. 165, it was the policy of respondent department to regard foreign personal holding corporations operated in Wisconsin like Northern Securities & Investment Company, as though they were Wisconsin corporations under sec. 71.02 (3) (e) Wis. Stats., and to accept from them annual income-tax returns on that basis and petitioner both individually and as the sole stockholder and principal officer of Northern Securities & Investment Company had been informed of that policy and during that period, caused the corporation to file returns and also filed his individual returns in reliance thereon and in conformity with such policy."

Taxpayer contends that the conduct of the department in accepting annual income-tax returns of both the Northern Securities & Investment Company and taxpayer on the basis of sec. 71.02 (3) (e), Stats., *supra,* being valid until the *Briggs & Stratton* decision was rendered in January, 1946, should estop the department from retroactively levying the tax for the years 1942–1945, inclusive, because taxpayer, in reliance on the prior erroneous interpretation of the statute by the department, refrained from reincorporating Northern as a Wisconsin corporation, which he readily could have done as the sole stockholder.

In the recent case of *Libby, McNeill & Libby v. Department of Taxation* (1952), 260 Wis. 551, 51 N. W. (2d) 796, the principle of estoppel was invoked to prevent the department from retroactively levying a dividend tax against the taxpayer corporation, which had failed to deduct the tax from dividends declared and paid to its stockholders in reliance upon a ruling by the department, that no tax was due, which ruling was based on a decision by this court that was subsequently overruled. The equitable principle upon which estoppel was held to apply in that case was that taxpayer had relied on an erroneous ruling to its prejudice because it had no effective way of recovering the tax from its stockholders,

and, but for the erroneous ruling of the department based upon the decision of this court, such deduction would have been made at the time of payment of the dividends.

The facts in the *Libby, McNeill & Libby Case* are readily distinguishable from those in the instant case. Here the erroneous ruling of the department was not based on a court decision which was later repudiated and overruled, but such ruling was directly contrary to the ruling of this court announced in the *Newport Case*. The *Briggs & Stratton* decision did not overrule the *Newport* decision but expressly adhered to the decision in the *Newport Case*.

Furthermore, Northern, a corporation, is a separate entity from the taxpayer, an individual, and such difference in entities is recognized by the state for income-tax purposes. It would seem to be carrying the principle of estoppel entirely too far to extend the same to a situation where the taxpayer did nothing in reliance on an erroneous ruling in his individual capacity, but acted, or refrained from acting, in his capacity as a stockholder of a corporation in such a way that he was thereby individually prejudiced as a result of distributions received from the corporation.

In *Laabs v. Tax Comm.* (1935), 218 Wis. 414, 422, 261 N. W. 404, the court ruled that where the tax commission had refrained from assessing income from patent royalties because of a decision of the United States supreme court, the commission was not precluded from making a corrected assessment subsequent to the overruling of such decision, *and within the time limited by statute for the making of such assessments.* In its decision the court stated:

"To compel him [plaintiff] to pay a tax which, . . . the state is entitled to collect, does not seem to us to produce injustice or undue hardship. *To deprive the state of revenue to which it was justly entitled upon a correct view of the law would produce injustice.*" (Emphasis supplied.)

Furthermore, the decision of this court in the *Newport Case* in 1935 should have been notice to taxpayer that the validity of sec. 71.02 (3) (e), Stats., *supra,* was at least very much in doubt, the same having been declared unconstitutional and void in that case, and that any subsequent ruling of the department based on sec. 71.02 (3) (e), *supra,* being valid was open to very serious question.

*By the Court.*—Judgment affirmed.