DEPARTMENT OF TAXATION, Appellant, v. PABST and others, Respondents.   [Two cases.]

*November 3—December 1, 1961.*

For the appellant the cause was argued by *E. Weston Wood* and *Harold H. Persons,* assistant attorneys general, with whom on the briefs was *John W. Reynolds,* attorney general.

For the respondents there was a brief by *Michael, Best & Friedrich,* attorneys, and *Roy C. LaBudde* and *Frank J. Pelisek* of counsel, all of Milwaukee, and oral argument by *Mr. LaBudde* and *Mr. Pelisek.*

DIETERICH, J. The appeal and review raise one issue: Whether the trusts involved were administered in Wisconsin within the meaning of sec. 71.08 (8), Stats., in the years 1952, 1953, and 1954.

The relevant facts contained in the stipulation are as follows:

Both trusts are *inter vivos* trusts established by a trust agreement executed December 24, 1938, in Wisconsin by Ida C. Pabst, a resident of Wisconsin.

Since February 25, 1952, the trustees are Harald Pabst, a resident of Colorado, Robert E. Pabst, a resident of Connecticut, and Fred Pabst, Jr., a resident of Vermont. None of the trustees during any of the years involved have spent more than eight weeks in this state and such eight weeks have not been continuous.

The initial beneficiaries of the trust are David Pabst, a resident of Wisconsin, and Pauline P. Wurlitzer, a resident of California.

For each of the years 1939 through 1951, and for the period January 1 to March 1, 1952, the trustees filed timely Wisconsin income-tax returns and paid the amounts of tax, if any, shown on such returns. During all of these periods the trusts were administered in Wisconsin.

The assets of the trusts involved are comprised solely of intangible personal property, including insurance policies, stocks, bonds, debentures, notes, certificates of indebtedness, and cash. During the years in question the insurance policies were located in Wisconsin.

The cash of the trusts involved was at all times material held in a checking account in the First Wisconsin National Bank of Milwaukee. The only persons authorized to sign checks on behalf of the trusts involved were certain members of the Pabst family, including the trustees.

During the three-year period involved (1952, 1953, and 1954), all checks on behalf of the trusts involved were written by three members of the Pabst family, Fred and David Pabst of Waukesha county, Wisconsin, and Robert Pabst of Connecticut. Except for a small percentage of the trust, which was held in the Milwaukee bank in the form of a checking account and the insurance policies kept at the office of Pabst Farms, Inc., all other evidences of the assets

of the trusts were physically held outside of the state pursuant to custodian agreement entered into between the trustees and various banks and trust companies.

Investment advice as to all assets was given to the trustees solely by Loomis-Sayles & Company, an investment-counseling firm of Boston, Massachusetts, from where all of the financial advice and research originated. Financial recommendations were forwarded through a Milwaukee office of Loomis-Sayles to the trustees or to O. A. Weber, who had an office at Pabst Farms, Inc., in Wisconsin. O. A. Weber is a resident of Wisconsin and was at all times here material employed by Fred Pabst, husband of the settlor. Mr. Weber worked at the office of Pabst Farms, Inc., near Oconomowoc. He has represented the Pabsts' interests, including the trustees of the trusts in question, for many years in financial and investment matters. Weber did not independently evaluate any recommendation made by Loomis-Sayles, but as agent of the trustees, had authority to carry out the recommendations made by Loomis-Sayles with respect to purchases and sales of investments of these trusts without first notifying trustees or obtaining their approval in advance. The stipulation does not state whether Weber had authority to reject any recommendations of Loomis-Sayles.

Based on the recommendations of Loomis-Sayles, the mechanics of all transactions concerning the assets of the estate were initiated by O. A. Weber in Wisconsin. The actual sales or purchases were made outside of Wisconsin. Stock transactions were initiated by O. A. Weber's instructing a representative of Paine-Webber, a stockbrokerage firm in Milwaukee to purchase or sell stock. On receiving such instructions, the Milwaukee office would wire its New York office to carry out the transaction whatever it might be, to sell or purchase, which sale or purchase was made outside of the state. The sale or purchase of other in-

tangible assets of the trust was also consummated outside of the state of Wisconsin.

All of the books and records of the trusts involved were located and the bookkeeping and clerical work with respect thereto were carried on in Wisconsin at the office of Pabst Farms, Inc., under the direction of O. A. Weber and his associates.

The trustees made the decision to obtain the services of Loomis-Sayles and empowered O. A. Weber to carry out as their agent each transaction to be made on behalf of the trusts upon recommendation of Loomis-Sayles, without first obtaining trustees' approval of a particular recommendation. At any time trustees could have terminated the arrangement of Mr. O. A. Weber to act as agent for the trustees.

No part of the income of these trusts received during any of the years involved, nor for any year prior thereto, has ever been distributed by the trustees. The trustees during the period involved were given sole and unrestricted discretion whether to distribute or accumulate all or any part of the income received each year. The trustees did not during the period involved hold any meetings or carry on any correspondence with respect to the distribution or accumulation of income. The trustees determined not to distribute income pursuant to an understanding between them, and also existing between their predecessor trustees, to the effect that all income would be accumulated unless there was a material change in economic circumstances of the initial beneficiaries to whom income could be distributed. No such change or financial need of the said beneficiaries was brought to the attention of the trustees during any of the years here involved. The authority delegated by the trustees to Weber and the authority to write checks on behalf of the trusts delegated by the trustees to three other members of the Pabst family did not extend to making distributions of in-

come by the writing of checks on the trust accounts, by indorsement of checks received on behalf of the trust accounts or in any other manner.

It is an elementary principle of law that the title to trust property vests in the trustees. (See sec. 231.16, Stats.) In this action the trustees are all nonresidents of the state of Wisconsin. The corpus of the trusts is composed of intangible personal property. Therefore under the well-accepted maxim *"mobilia sequuntur personam"* the situs of the income from these intangibles would not be the state of Wisconsin. Thus, the income from the Pabst Trusts No. 1 and No. 5, would not be taxable under secs. 71.01 (1) and 71.02 (2), Stats.[1]

However, the paper evidences of a portion of the intangible assets of the corpus were present in Milwaukee county during part of the year of 1952. Under sec. 73.015 (1), Stats.,[2] this is sufficient to confer jurisdiction on the circuit court for Milwaukee county for the purpose of determining the question of whether the trusts in issue were "administered" in this state within the meaning of sec. 71.08 (8) [3] for the years 1952, 1953, and 1954.

---

[1] "71.01 (1) . . . there shall be assessed, levied, collected, and paid a tax on all net incomes . . . by every nonresident [person] of the state, upon such income as is derived from property located or business transacted within the state, . . ."

"71.02 (2) The term 'person,' . . . shall mean and include . . fiduciaries and corporations, and the word 'corporation' shall mean and include . . . common-law trusts organized or conducted for profit, . . ."

[2] "73.015 (1) The provisions of this section shall be the sole and exclusive remedy for review of any decision or order of the Wisconsin board of tax appeals, . . .

"(2) . . . proceedings involving taxes of nonresident individuals or fiduciaries shall be instituted in the circuit court of the county which includes the situs of the property or income assessed, . . ."

[3] "71.08 (8) Trustees of trust estates created by . . . declaration of trust . . . shall annually make a return of all income received by them as such to the assessor of incomes of the county in which the trust or estate is being administered, . . ."

Sec. 227.20, Stats., provides the scope of review accorded to a decision of an agency by the court. Sec. 227.20 (1) (d) provides "the court may . . . reverse or modify it [the agency] if the substantial rights of the appellant have been prejudiced as a result of the administrative findings, inferences, conclusions, or decisions being: . . . (d) Unsupported by substantial evidence in view of the entire record as submitted; . . ."

The case of *Chicago, M., St. P. & P. R. Co. v. Public Service Comm.* (1951), 260 Wis. 212, 221, 50 N. W. (2d) 416, said:

". . . this court is bound to accept the findings of fact of the commission, if the same are supported by substantial evidence, . . ."

"When the matter is brought before this court on appeal from an order . . . of the circuit court, the question presented is whether the circuit court erred in its determination, this court in the exercise of its appellate jurisdiction does not reverse or modify the order of the commission. . . . The question presented, then, is whether the circuit court was in error." *Clintonville Transfer Line v. Public Service Comm.* (1945), 248 Wis. 59, 76, 77, 21 N. W. (2d) 5.

The Wisconsin Department of Taxation assessed the additional taxes on the trusts in question under sec. 71.08 (8), Stats. The issue presented to the Wisconsin board of tax appeals was whether the trusts involved were administered in Wisconsin within the meaning of the section. The board found that the trusts were not so administered. The circuit court affirmed. The evidence in the record supports the determination of the Wisconsin board of tax appeals that the trusts involved were not administered in Wisconsin within the meaning of sec. 71.08 (8).

"Administer" is defined in Webster's New International Dictionary (3d ed., unabridged), as ". . . to manage the affairs of . . . to direct or superintend the execution, use, or conduct of . . . to manage or conduct affairs . . ."

To administer the trusts involved would be to manage, direct, or superintend the affairs of these trusts. Weber did not perform these functions. The policy decisions were made by the nonresident trustees. Weber implemented those policy determinations. The trustees decided whether to distribute the income, whether to seek investment advice, and whether ministerial duties should be delegated to someone other than themselves. Ministerial acts performed in Wisconsin included an annual audit made by a Milwaukee certified public accountant and the filing of federal tax returns in the Milwaukee office of the internal revenue department. The activities carried on in Wisconsin were only incidental to the duties of the trustees.

The facts contained in the stipulation clearly establish that Weber did not independently initiate or evaluate any recommendation made by Loomis-Sayles to the trustees, that he was not permitted to exercise any independent judgment in these matters, nor did he at any time modify or reject any recommendation of Loomis-Sayles. It further established that the trustees initiated the initial policy of administering the trust by giving direction as to the policy to be pursued by the trust and the course of its business. Loomis-Sayles of Boston, Massachusetts, was in the employ of the trustees for the purpose of managing the investments of the trust and were constituted as agents of the trustees and they had full power to make the decisions respecting the investment or reinvestment of the trust securities. On the other hand, Weber carried out the mechanics of the purchase or sale of such securities. He had no power and never exercised any power to either alter or modify the decisions of Loomis-Sayles. It is quite apparent from the facts contained in the stipulation that the trustees were satisfied with the execution of the policy of the trust as established by them and therefore it was not necessary that the two trusts be administered in any other manner than that which they originally designated and as set forth in the stipulation.

The record contains substantial evidence which supports the decisions of the Wisconsin board of tax appeals; the judgments of the circuit court therefore must be affirmed.

*By the Court.*—Judgments affirmed.