PABST and another, Trustees, Appellants, v. DEPARTMENT OF TAXATION, Respondent.

*February 7—March 5, 1963.*

316

317

318

For the appellants there were briefs by *Michael, Best & Friedrich,* attorneys, and *Roy C. LaBudde* and *Frank J. Pelisek* of counsel, all of Milwaukee, and oral argument by *Mr. LaBudde.*

For the respondent the cause was argued by *E. Weston Wood,* assistant attorney general, with whom on the brief were *George Thompson,* attorney general, and *Harold H. Persons,* assistant attorney general.

CURRIE, J.   This appeal presents these two questions:

(1) Was the instant *inter vivos* trust "administered" in Wisconsin during the years 1952, 1953, and 1954, within the meaning of sec. 71.08 (8), Stats.?

(2) If sec. 71.08 (8), Stats., is construed to subject the income of this trust for these three years to Wisconsin income tax, does this statute as so construed violate the due-process clause of the Fourteenth amendment to the United States constitution?

*Administration of the Trust in Wisconsin.*

Sec. 71.08 (8), Stats., during the three-year period in question provided in part as follows:

"Trustees of trust estates created . . . by declaration of trust . . . shall annually make a return of all income received by them as such to the assessor of incomes of the county in which the trust . . . is being administered."

The key word of the statute, insofar as this appeal is concerned, is "administered." In *Department of Taxation v. Pabst* (1961), 15 Wis. (2d) 195, 112 N. W. (2d) 161, we had before us the application of this same statute to two other trusts created by the settlor Ida C. Pabst. The decision cited the definition of "administer" in Webster's New International Dictionary (3d ed., unabridged), which stressed the element of managing, directing, or superintending affairs.

Nevertheless, upon further consideration we now conclude that the statutory word "administered" as applied to an *inter vivos* trust of intangibles means simply conducting the business of the trust. The problem of determining whether such a trust is administered in Wisconsin may be made more difficult when the business of the trust is partly conducted in other states as well as in Wisconsin. In such a situation, a proper application of the statute would appear to require the conclusion that the trust is being administered in Wisconsin within the meaning of the statute if the major portion of the trust business is conducted in Wisconsin.

Having settled upon the meaning of the statutory word "administered" as applied to an *inter vivos* trust of intangibles, we must examine the facts to ascertain if the major business activities of the instant trust were carried on in Wisconsin during the three years in question. At the outset we are met by the contention of the attorney general that the board has made a factual determination that this trust was administered during those years in Wisconsin, and that a reviewing court is bound thereby under sec. 227.20 (1)(d), Stats., because this finding is supported by substantial evidence in view of the entire record as submitted.

All the facts before the board, however, were stipulated. In such a situation we deem the scope of judicial review to be that stated in *Van Roy v. Industrial Comm.* (1958), 5 Wis. (2d) 416, 425, 92 N. W. (2d) 818:

"The facts in the instant case are undisputed. In such a situation if but one inference can reasonably be drawn from such undisputed facts a question of law is presented and the finding of the commission to the contrary is not binding on the reviewing court; but, if more than one inference can reasonably be drawn, then the finding of the commission is conclusive. *Schmidlkofer v. Industrial Comm.* (1953), 265 Wis. 535, 538, 61 N. W. (2d) 862."

As pointed out in the *Van Roy Case* opinion, the California court in *Reinert v. Industrial Accident Comm.* (1956), 46 Cal. (2d) 349, 354, 294 Pac. (2d) 713, has adopted this same test of the scope of judicial review with respect to an administrative agency's decision where the facts are undisputed.

After setting forth its findings of fact, in the instant case, the board set forth its determination that the trust was administered in Wisconsin as a conclusion of law and not as a finding of fact. While the board's label is not conclusive with respect to determining the substance of the statement as either a conclusion of law or finding of fact, we deem it significant in this case. It indicates that the board considers that the application of sec. 71.08 (8), Stats., to its findings of fact, with respect to how the business of the trust has been carried on, involves a question of law. Errors of law are always reviewable by the reviewing court. Sec. 227.20 (1) (b).

In 4 Davis, Administrative Law Treatise, ch. 30, p. 189 *et seq.,* Professor Davis points out that the United States supreme court employs two conflicting methods of administrative review where the issue is whether the administrative agency has correctly applied a statute to certain facts. The first is the so-called analytical approach whereby the court decides which part of the agency's determination presents a question of fact and which part a question of law. The second is the practical or policy approach which tries to avoid allocation of functions merely on the literal meaning of the terms "fact" and "law." When this practical approach is used,

the court holds that, " 'The judicial function is exhausted when there is found to be a rational basis for the conclusions approved by the administrative body.' " [1] On the other hand, Davis notes that when the court deems the question presented to be suitable for judicial determination, it feels free to substitute its own judgment for that of the agency. When the court substitutes its own judgment, however, it would appear that it in effect finds the agency's decision without rational basis in law or treats the issue analytically as a question of law for the court.

Davis states that the United States supreme court has not attempted to reconcile the conflict in its decisions which occurs as a result of sometimes applying the analytical approach and at other times the practical approach. He concludes that the court applies the analytical approach when it does not wish to be bound by the agency's application of a statute to a set of facts, and the practical approach when it believes the agency's application of the law should be deferred to. Davis believes that one of the most-important factors which influences the court's choice of approach in this field is the comparative qualification of court and agency to decide the particular issue. The court often deems agencies and their staffs to be expert within their own specialized fields. In such situations, the practical approach is likely to be employed rather than the analytical in determining the scope of review to be applied.

We believe that pars. (b) and (d) of sec. 227.20 (1), Stats.,[2] require Wisconsin courts to employ the analytical approach when reviewing agency decisions. Nevertheless, in fields in which an agency has particular competence or expertise, the courts should not substitute their judgment for

---

[1] *Rochester Telephone Corp. v. United States* (1939), 307 U. S. 125, 146, 59 Sup. Ct. 754, 83 L. Ed. 1147.

[2] Sec. 227.20 (1) in part provides:

"The court may affirm the decision of the agency, or may reverse or modify it if the substantial rights of the appellant have

the agency's application of a particular statute to the found facts if a rational basis exists in law for the agency's interpretation and it does not conflict with the statute's legislative history, prior decisions of this court, or constitutional prohibitions.

In the instant case, we do not deem the board more competent than this court to decide a question of law involving trust administration. On the other hand, if we were dealing with a question concerning an accounting procedure to be followed, we might well defer to the board's conclusion in the matter. Therefore, we conclude that the instant question of trust administration, upon the undisputed, stipulated facts, presented a question of law reviewable by both the circuit court and this court. Although this conclusion may be difficult to reconcile with some of the language in *Department of Taxation v. Pabst, supra,* we deem it correct in view of the above analysis of the problem.

Having determined the scope of judicial review applicable in the instant case, we may now review the board's conclusion of law. The facts upon which the board's conclusion was based were clearly supported by substantial evidence in view of the entire record as submitted. Moreover, upon review of such facts we reach the same conclusion of law as did the board when it determined that the trust was administered in Wisconsin during 1952, 1953, and 1954 within the meaning of sec. 71.08 (8), Stats. During these three years, Weber, while acting on his own initiative and sole responsibility, invested about $183,000 in stocks and bonds, $80,000 in notes secured by mortgages, and $409,000 in other notes which

been prejudiced as a result of the administrative findings, inferences, conclusions, or decisions being:

"(b) In excess of the statutory authority or jurisdiction of the agency, or affected by other error of law; or

"(d) Unsupported by substantial evidence in view of the entire record as submitted."

were primarily unsecured. During this same period, he exercised the responsibility delegated by the trustees for investing and reinvesting trust assets in amounts varying from about $535,000 to $813,000. Moreover, the only business office of the trust was at Pabst Farms, Inc., where all trust records were kept and all bookkeeping and clerical work was done under Weber's supervision.

While Weber managed, directed, and supervised the affairs of the trust during this period, the two trustees made but one decision, namely, to sell the theater property. The decisions to accumulate trust income until a material change occurred in the financial circumstances of the beneficiary, and to retain the Pabst Brewing Company stock had been made by the predecessor trustees. The two trustees did not even hold a meeting during these three years to discuss trust business. The record before the board clearly established that the major portion of the business of the trust was conducted in Wisconsin during the period in question. The essential difference in the facts in *Department of Taxation v. Pabst, supra,* which distinguishes that case from this, is that there the investing policies were determined and put into effect outside of Wisconsin.

### The Constitutional Issue.

The trustees contend that if sec. 71.08 (8), Stats., is interpreted to permit the taxing by Wisconsin of trust income derived from intangibles for the years in question, then that statute violates the due-process clause of the Fourteenth amendment. The trustees take the position that under the rule, *mobilia sequuntur personam,* the situs of this income is the place of residence of the trustees, not Wisconsin, and, therefore, Wisconsin lacks jurisdiction to impose a tax thereon. In support of this position they cite *Newport Co. v. Tax Comm.* (1935), 219 Wis. 293, 261 N. W. 884, *Briggs & Stratton Corp. v. Department of Taxation* (1946),

248 Wis. 160, 21 N. W. (2d) 441, and *Kimberly-Clark Corp. v. Department of Taxation* (1946), 248 Wis. 165, 21 N. W. (2d) 441.

In the *Newport Co. Case,* Wisconsin attempted to tax as income the profit made from the sale of certain corporate stock by the Newport Company. The taxpayer was a Delaware corporation engaged in manufacturing and licensed to do business in Wisconsin. Over 70 percent of the corporation's business was transacted in Wisconsin. The tax commission contended that the state had the right to tax this sale of corporate stock under sec. 71.02 (3) (e), Stats. 1927, which provided that a foreign corporation that carried on its principal business in Wisconsin would be deemed a resident of the state for income-tax purposes. This court, however, held that it was bound by the decisions of the United States supreme court with respect to the taxing power of a state over foreign corporations transacting business therein;[3] and that sec. 71.02 (3) (e), Stats. 1927, was unconstitutional and void in view of such decisions. In its decision the court said (p. 306):

"It thus appears to be the rule, established by the United States supreme court, and heretofore recognized by this court, that as to nonresidents there may be no imposition of income taxes upon income derived from property or business located without the state; that the situs of such intangibles as corporate stock is the domicile of the owner; that since property of this character, owned by a foreign corporation, is not located within the state of Wisconsin, it is not subject to an income tax levied by this state."

[3] *Farmers Loan & Trust Co. v. Minnesota* (1930), 280 U. S. 204, 50 Sup. Ct. 98, 74 L. Ed. 371; *Baldwin v. Missouri* (1930), 281 U. S. 586, 50 Sup. Ct. 436, 74 L. Ed. 1056; *Beidler v. South Carolina Tax Comm.* (1930), 282 U. S. 1, 51 Sup. Ct. 54, 75 L. Ed. 131; and *First Nat. Bank v. Maine* (1932), 284 U. S. 312, 52 Sup. Ct. 174, 76 L. Ed. 313.

In the *Briggs & Stratton Corp. Case, supra,* Wisconsin sought to tax the taxpayer corporation on income which it received on certain securities during the years 1938, 1939, and 1940. Although a Delaware corporation, taxpayer was licensed to do business in Wisconsin where it did all of its manufacturing and held 99 percent of its tangible property. The decision to purchase the securities from surplus funds was made by the directors at meetings in Milwaukee. The securities were kept in a safe-deposit box in that city.

The attorney general, in behalf of the Department of Taxation, in that case urged this court to reconsider its decision in the *Newport Case,* on the ground that it had been erroneously decided, and cited two authorities therefor: *First Bank Stock Corp. v. Minnesota* (1937), 301 U. S. 234, 57 Sup. Ct. 677, 81 L. Ed. 1061, 113 A. L. R. 228, and *Chestnut Securities Co. v. Oklahoma Tax Comm.* (10th Cir. 1942), 125 Fed. (2d) 571 (certiorari denied, 316 U. S. 668, 62 Sup. Ct. 1035, 86 L. Ed. 1744). Nevertheless, for reasons explained in its opinion in the *Briggs & Stratton Corp. Case,* this court did not pass upon the question of whether the *Newport Co. Case* had been wrongly decided in view of the above-cited federal decisions. It concluded that the department was precluded from claiming that then sec. 71.02 (3) (e), Stats., was valid, and, because of the statute's invalidity, there was no other statutory basis whereby the state could tax the income of this foreign corporation derived from intangibles.

The *Kimberly-Clark Corp. Case* was a companion case to the *Briggs & Stratton Corp. Case* and was decided in a short, one-paragraph opinion on the authority of the latter case.

The taxpayer in *Cudahy v. Department of Taxation* (1952), 261 Wis. 126, 52 N. W. (2d) 467, contended, as

had the department in the *Briggs & Stratton Corp. Case,* that the *Newport Co. Case* was wrongly decided in view of *First Bank Stock Corp. v. Minnesota, supra,* and *Chestnut Securities Co. v. Oklahoma Tax Comm., supra.* Again, for reasons explained in the *Cudahy Case* opinion, this court did not pass on this contention.

These two last-cited federal cases carve out a business-situs exception to the application of the rule, *mobilia sequuntur personam,* and hold that a state may tax income of a foreign corporation derived from intangibles, where the actual business situs of the corporation is within the taxing state, without running afoul of the due-process clause of the Fourteenth amendment. Appellant trustees concede that these cases so hold but contend that the business-situs exception to the rule, *mobilia sequuntur personam,* does not apply to trusts because they are not engaged in a business. We do not deem this a valid basis upon which to distinguish those two cases.

We are convinced that there has been a definite trend in the United States supreme court's decisions away from the rigid rules, which it laid down in the early 1930's, relating to jurisdiction of states to tax income. Under the later decisions of that court, the test seems to be whether the state which attempts to tax has a sufficient nexus with the production of the income to afford a constitutional basis for imposing the tax. This court recently had occasion to consider the nexus test of the United States supreme court in *Moore Motor Freight Lines v. Department of Taxation* (1961), 14 Wis. (2d) 377, 111 N. W. (2d) 148, in considering the jurisdiction of Wisconsin to tax income derived from interstate commerce. We concluded that the controlling circumstance, in passing on the question of whether there is sufficient nexus to tax, is "whether the state has given any-

thing for which it can ask return," citing *Wisconsin v. J. C. Penney Co.* (1940), 311 U. S. 435, 444, 61 Sup. Ct. 246, 85 L. Ed. 267, 130 A. L. R. 1229.

In the instant case Wisconsin has extended the protection of its laws to the activities of Weber in carrying on the business of the trust at the office of Pabst Farms, Inc. Although no rent was paid by the trust for the use of such office, we deem this an entirely fortuitous circumstance. The only office that the trust had was maintained in Wisconsin and the major portion of the trust's business was transacted here during the period in question. We are satisfied there was a sufficient nexus with Wisconsin to permit it to impose the income taxes which it did, and we so hold.

*By the Court.*—Judgment affirmed.

DIETERICH, J. (*concurring*). I agree with the result reached in the majority opinion, but I cannot agree with conclusions drawn in the discussion of semantics contained therein.

The opinion conveys the impression that this case is almost identical on its facts to the last previous appeal to this court involving trusts created by Ida C. Pabst, and that the only explanation for the difference in this court's holdings in the two appeals is that we have now determined that the word "administer" means to conduct rather than to manage, direct, or superintend.

If this is the distinction between the holdings in the two cases, it is a meaningless one. Referring again to Webster's New International Dictionary (3d ed., unabridged), one finds various synonyms for the word "conduct" including manage, control, and direct. In other words, to say that when a person administered a trust is the same as saying that one conducted a trust, is a roundabout way of saying that a person managed, controlled, and directed that trust.

The only distinction between this case and the *Pabst Case* contained in 15 Wis. (2d) 195, 112 N. W. (2d) 161, is that they are different on their facts. The facts in the first case would not support an inference that the trusts there involved were managed in the state of Wisconsin; the facts on this appeal will support such inference.

It is a fundamental principle of law that each case stands on its own facts. The application of this principle in the judicial process will naturally lead to what appear to be contradictory results by an appellate court unless care is taken to distinguish the facts of each and every case before applying the law.