GLENN L. HENRY, Corporation Counsel Dane County
You present a number of problems which had arisen in making protective placements under sec. 55.06, Stat,.
Your first question is:
 1. When the evaluation and evidence disclose that an individual in need of placement has a continuing history of violent behavior, which agency bears the ultimate responsibility for a) locating. b) providing, and c) funding an appropriate facility?
I assume you use the term "ultimate" in the sense of basic or fundamental, which is one of the definitions appearing inWebsters 3rd New International Dictionary, Unabridged. The same dictionary also gives "basic or fundamental" as a definition for "primary."
Section 55.06(8), Stats., directs that the "board designated under s. 55.02 or an agency designated by it shall cooperate with the court in securing available resources." You indicate that the board so designated in your county is the board of public welfare so that its obligation to cooperate in securing resources is broad enough to cover both locating and providing, at least when read in connection with sec. 51.42(1)(b), Stats., which provides: *Page 250 
 "(b) Responsibility of county government. The county boards of supervisors have the primary responsibility for the well-being, treatment and care of the mentally ill, developmentally disabled, alcoholic and other drug dependent citizens residing within their respective counties and for ensuring that those individuals in need of such emergency services found within their respective counties receive immediate emergency services . . . ."
True, sec. 55.04(1) (b), Stats., provides that the Department shall have responsibilities in administration of ch. 55 including "[e]valuation, monitoring and provision of protective placements."
Section 55.05(1) provides that the Department shall provide "protective services" only if "no other suitable agency is available." Your county board of public welfare is a suitable agency.
While some provisions of ch. 55 deal separately with protective services and protective placements, the Legislature designated "Protective Services" as the title of ch. 55, Stats. (ch. 284, Laws of 1973), which includes placements as well as other protective services.
65 Op. Att'y Gen. 49 (1976) stated that the county may not refuse care to a person eligible under the statutes even though the state has not provided the wherewithal. At Pr 53-54 of that opinion I stated:
 ". . . these grants-in-aid constitute assistance in defraying the costs of meeting the counties' obligation. There never has been any guarantee that full funding would be available as the state level for all eligible persons.
"* * *
 "Finally, it is well established that the legislature may properly impose new duties involving financial obligations upon counties without providing any appropriation whatsoever on the theory that the county is a political subdivision or agency of the state. Columbia County v. Wisconsin Retirement Fund (1962), 17 Wis.2d 310, 116 N.W.2d 142. Thus, where the legislature has imposed on the counties an absolute duty to carry out a program, and the state's grants-in-aid are not sufficient for full funding, the counties bear the responsibility for funding those programs." *Page 251 
In the Columbia County case cited in the above opinion the court said:
 ". . . There are many instances where the legislature imposes new duties involving financial obligations upon counties without providing any appropriation therefor. This is done on the theory the county is a political subdivision or agency of the state." (Ibid., p. 325.)
The situation which gave rise to your question appears to have been a commitment proceeding under sec. 51.20(1)2., Stats. If so, sec. 51.22(1) provides that the commitment shall be to "the board established under sec. 51.42 or 51.437" — in your case the board of public welfare. The commitment is to the state Department only in the case of nonresidents.
If the county does not operate its own appropriate facility, the statutes authorize furnishing such a facility through contract with other agencies. See, for example, sec. 51.42(9), Stats.
Your second question is:
 2. When neither the 51.42 Board nor the lead agency has been able to successfully carry out those three functions prior to an order of the court requiring protective placement, under what circumstances, if any, does it become the obligation of the Wisconsin Department of Health and Social Services to perform any or all of these three functions pursuant to either Section 55.04 (b) or Section 55.05'? If such obligations do exist on the part of the Department, what procedure is to be followed in requesting that the Department fulfill those obligations?
Section 46.03(19), Stats., provides that the Department shall "[a]dminister the statewide program of protective services under ch. 55." Section 51.42(1)(b), Stats., gives counties the primary responsibility for "well-being, treatment and care" for individuals in need of such services.
In Department of Taxation v. Pabst, 15 Wis.2d 195, 201-202,112 N.W.2d 161 (1961), the court defined the term administer as follows:
 "`Administer' is defined in Webster's New International Dictionary (3d ed., unabridged), as `. . . to manage the affairs of *Page 252 
. . . to direct or superintend the execution, use, or conduct of . . . to manage or conduct affairs . . .'"
The Legislature has used different terminology with respect to supervision and delivery of services. Section 51.22(1), for example, provides for commitment of mentally ill nonresidents to the state Department, in which case its responsibility is direct. Section 51.05(3) provides for admission to state mental health institutes, administered by the Department, of a person without a county responsible for his care. See, also, sec. 51.06, Stats.
Under certain circumstances a person with residence in a county may be placed in a state mental health institute operated by the Department, as provided in sec. 51.05(2); but such placement would probably be appropriate only in rare cases.
The legislative pattern appears to be to make the Department responsible for direct delivery of services only in state institutions and for nonresidents; and to make counties responsible for delivery of services to their residents under state supervision.
You also ask:
 3. The Dane County Home is a licensed nursing home under Section 50.02, Wis. Stats. It is operated by the Dane County Hospital and Home Commission and is not controlled in any way by the Dane County Board of Public Welfare or the 51.42 Board. The population of the Home consists primarily of elderly patients, and it has no contracts or working agreements with either the lead agency or the 51.42
Board.
 Under the circumstances outlined above, has the County, by establishing such a facility for the elderly, subjected the Home to court-ordered protective placement of other types of individuals for whom no suitable facilities can be found despite the provisions contained in H 32.06 (4). H 32.27 (1) and (5) (g) and H 32.29 (16) (d) of the Administrative Code?
Wis. Adm. Code section H 32.06(4) referred to above provides:
 "A nursing home shall not accept or keep patients who are destructive of property or themselves, who continually disturb others, who are physically or mentally abusive to others or who *Page 253 
show any suicidal tendencies, unless the nursing home can demonstrate to the satisfaction of the department that it possesses and utilizes the appropriate physical and professional resources to manage and care for such patients in a way that does not jeopardize the health, safety, and welfare of such patients themselves or of other patients in the nursing home . . . ."
According to Verbeten v. Huettle, 253 Wis. 510, 34 N.W.2d 803
(1948), and Thomson v. Racine, 242 Wis. 591, 9 N.W.2d 91 (1943), a valid administrative rule has the force of law.
Section 55.06(9)(a), Stats., provides that placement may be made to such facilities as "nursing homes, public medical institutions, centers for the developmentally disabled, foster care services and other home placements or to other appropriate facilities." The foregoing does not require the designated facilities to accept a placement. In State v. Ramsay, 16 Wis.2d 154,167, 114 N.W.2d 118 (1962), the supreme court held that a court could not require a public agency to accept custody of a person unless there is a statute authorizing the court to do so or a statute requiring the agency to accept such a placement.
 "Sec. 247.23 (1), Stats., which authorizes the court during the pendency of a divorce action to provide by order for the temporary custody of children of the parties, unlike sec. 247.24, does not spell out the persons and agencies to whom the court may award such custody. It merely authorizes the court to make such a temporary custody order `as in its discretion shall be deemed just and reasonable.' While sec. 247.23 (1) may grant broader custody powers to the court than sec. 247.24, the court cannot compel any agency, public or private, to accept such awarded custody against the will of those charged with the administration of the agency, absent some specific statute so requiring."
BCL:BL *Page 254