GLENN L. HENRY, Corporation Counsel Dane County
You have asked my opinion about several aspects of liability, reimbursement and collection for services provided by boards established under secs. 51.42 and 51.437, Stats. These boards are commonly known as community mental health, mental retardation, alcoholism and drug abuse services boards, and community developmental disabilities service boards, respectively. Several of the issues you have raised are discussed in 63 OAG 560 (1974). *Page 50 
Your first question is whether certain statutory provisions relating to legal settlement apply to programs established under secs. 51.42 and 51.437, Stats. Although the resolution of this issue is complicated by conflicting statutes, it is my opinion that the concept of legal settlement is alien to the operation of these programs.
Sections 46.10 (maintenance of inmates or outpatients at public institutions), 51.09 (1) (b) (drug addicts), 51.10 (2) (voluntary admissions for mental illness), and 51.45 (16) (d) (prevention and control of alcoholism), Stats., retain references to determination of and liability based upon legal settlement. All of these references predate the establishment of 51.42 and 51.437
boards, which changed the entire approach to the admission, commitment and treatment of those in need of services authorized by those statutes.
I have concluded that the concept of legal settlement is not applicable to any of the services provided through the boards. There are at least three reasons which require this conclusion. First, the elaborate provisions under which these boards operate contain no reference to legal settlement. Reimbursement to the boards for services provided or purchased is based upon a grant-in-aid system whereby the state agreed to pay 60 percent of the approved budget in 1974 and 100 percent in 1975, both amounts subject to the limitations placed upon the state's appropriation under sec. 20.435 (2) (b) and (2) (C), Stats. With the repeal and recreation of secs. 51.42 (8) and 51.437 (8), Stats., by ch. 39, Laws of 1975, the Department of Health and Social Services is committed to funding these programs essentially on a per-capita basis beginning July 1, 1975. The concept of legal settlement is inconsistent with this form of cost sharing.
Second, sec. 51.08, Stats., which contained formulas for reimbursement to counties based on legal settlement, was repealed by ch. 90, Laws of 1973. There is no longer any mechanism for determining eligibility for reimbursement based on legal settlement.
Third, sec. 51.002, Stats., now provides that any person committed under ch. 51 (mental health act) shall be committed under the care and custody of a 51.42 or 51.437 board unless the person is a nonresident of the state. In that case, commitment is *Page 51 
made through the Department of Health and Social Services. Those sections which retain references to determinations of legal settlement anticipate direct commitments by a judge to a particular facility rather than to a board as is now required. Therefore, any finding of legal settlement made by a judge pursuant to these sections has no legal effect on collection by the boards.
Under the former system for admission and treatment of the mentally ill, persons without legal settlement in any county were denominated state-at-large charges for which the state assumed the entire cost of treatment. There is no longer a state-at-large charge because the state has provided grants-in-aid regardless of the patient's legal settlement. The only situation presently approximating a state-at-large case is the commitment or admission of a person who is a nonresident of the state. Such a person is enrolled by the Department of Health and Social Services, and the state assumes the entire liability. The reference to nonresidents in sec. 51.002, Stats., is a further indication that legal settlement determinations were not intended to play a part in the 51.42 and 51.437 programs.
I reach this conclusion despite the general rule that repeals by implication are not favored in the law. An exception to this general rule is made if the earlier act is so manifestly inconsistent and repugnant to the latter act that they cannot reasonably stand together. Pattermann v. Whitewater (1966),32 Wis.2d 350, 356, 145 N.W.2d 705; Kienbaum v. Haberny (1956),273 Wis. 413, 420, 78 N.W.2d 888. Moreover the rule of statutory construction that a later enacted statute prevails over and supersedes the earlier one so far as they are repugnant and irreconcilable is applicable here. State ex rel. Mitchell v.Superior Court (1961), 14 Wis.2d 77, 79, 109 N.W.2d 522; Abdellav. Abdella (1954), 268 Wis. 127, 130, 66 N.W.2d 689.
A study of the legislative history of the current law discloses that at no point in the development of the programs under secs.51.42 and 51.437, Stats., did the legislature contemplate contracting with counties for recovery of funds based on legal settlement.
lt is worth noting that, according to the Department of Health and Social Services, no request for legal settlement adjustments *Page 52 
has been received from any county since the establishment of these boards. In contrast, the department received hundreds of requests before the changes discussed herein were effective. This is an acknowledgement by the several counties that no mechanism is available to file legal settlement claims.
The retention of the references to legal settlement in the sections mentioned at the outset of this opinion can best be explained as a "legislatively dropped stitch." See Scharping v.Johnson (1966), 32 Wis.2d 383, 394, 145 N.W.2d 719. Failure to change all such references is significant only in pointing out the complexity of this gradual conversion to a new system for treating persons afflicted with various mental illnesses. This process already has resulted in several amendments since the 51 42 and 51.437 boards were established.
Your second question is whether or not a person must be a legal resident of the county in order to obtain these services or whether it is enough that he physically reside within the county. The Department of Health and Social Services has taken the position that boards should adopt the definition of "residence" found in sec. 49.10 (12) (c), Stats. Legal residence as defined therein is the voluntary concurrence of physical presence and intent to remain, physical presence being prima facie evidence of intent to remain. I agree with the department's position subject to the admonition that this rule, which substantially codifies the common law rule, creates a rebuttable presumption.
It is often difficult to determine residence of an individual who requires emergency care. Though sec. 51.002, Stats., requires committing or admitting patients under the care and custody of a board, as a practical matter emergency patients are committed by judges directly to a particular facility, or directly admitted by a facility. Such action can be justified by the impracticability of physically transferring a person in need of immediate emergency care to his county of residence for enrollment under the care and custody of the appropriate board. In order to comply with the letter and spirit of sec. 51.002 and the entire mental health act as revised, information concerning the person's place of residence should be procured at the earliest possible time. Thereafter, the appropriate board should be instructed to enroll such person in its program. That board then would be liable for the cost of care and treatment. *Page 53 
Where counties act jointly, the Department of Health and Social Services is required to approve cooperative agreements pursuant to sec. 51.42 (3) (C), Stats. Such agreements do not always contain provisions for division of liability. The department has left this matter to the discretion of the counties under both secs. 51.42 and 51.437 and, in turn, the counties usually work out an agreement on a comparative population basis.
In all commitments or admissions, every effort should be made to resolve differences of opinion relative to an applicant's place of residence as soon as possible. I am hereby suggesting to the Department of Health and Social Services that a need exists for prompt legislative action to establish a method for resolving such disputes. Although other methods might be available, the procedures formerly used in legal settlement disputes would appear workable.
Finally, you ask whether a board may refuse care to an eligible person because funds to be provided by the state are insufficient to cover all eligible persons in the county. Under sec. 51.42, Stats., the primary responsibility for these programs rests with the respective counties. Boards established under sec. 51.437 are funded pursuant to sec. 51.42 (8). See sec. 51.437 (8), as amended by ch. 39, Laws of 1975. Formerly, the state's financial involvement was limited to secs. 51.42 (8) (c) and 51.437 (8) (c), Stats. Under these statutes, the department agreed to provide an appropriation by way of a grant-in-aid of 60 percent in the year 1974 and 100 percent beginning January 1, 1975. The latter provision was repealed by ch. 39, Laws of 1975. Section51.437 (8) was repealed and recreated to provide that 51.437
boards shall be funded pursuant to sec. 51.42 (8). That subsection contains a new formula for both programs, effective July 1, 1975, based upon per-capita considerations.
Both the repealed subsections and the existing provisions expressly limit state funding to that "within the limits of the appropriation" under sec. 20.435 (2) (b) and former sec. 20.435
(2) (C). Therefore, these grants-in-aid constitute assistance in defraying the costs of meeting the counties' obligation. There never has been any guarantee that full funding would be available at the state level for all eligible persons. *Page 54 
The appropriations under sec. 20.435 (2) (a) and former sec.20.435 (2) (c) always have provided for a sum certain amount. When that amount is expended, the authority of the department to reimburse counties for such services is extinguished. The department cannot increase the appropriation set by the legislature. As set forth under Art. VIII, sec. 2, Wis. Const.: "No money shall be paid out of the treasury except in pursuance of an appropriation by law . . . ."
Finally, it is well established that the legislature may properly impose new duties involving financial obligations upon counties without providing any appropriation whatsoever on the theory that the county is a political subdivision or agency of the state. Columbia County v. Wisconsin Retirement Fund (1962),17 Wis.2d 310, 116 N.W.2d 142. Thus, where the legislature has imposed on the counties an absolute duty to carry out a program, and the state's grants-in-aid are not sufficient for full funding, the counties bear the responsibility for funding those programs.
BCL:DPJ