GERARD S. PARADOWSKI, Acting Corporation Counsel Milwaukee County
Former Corporation Counsel Robert P. Russell asked my opinion on the following question:
 Does the Combined Community Services Board (51.42/. 437 Board) have the authority to execute a contract to purchase services described in the Coordinated Plan and Budget (CPB) without separate or individual authorization . . . of the County Board of Supervisors?
"The general rule in Wisconsin is that administrative agencies have only those powers that are expressly granted to them or which are necessarily implied from the statute setting forth their responsibilities." Wis. Soc. Wkrs. 1976 Campaign Committeev. McCann, 433 F. Supp. 540, 543 (E.D. Wis. 1977). Accord, Stateex rel. Farrell v. Schubert, 52 Wis.2d 351, 190 N.W.2d 529
(1971), and *Page 129 Nekoosa-Edwards P. Co. v. Public Serv. Comm., 8 Wis.2d 582,99 N.W.2d 821 (1959).
Sections 51.42 (5)(h)7., 8., and 51.437 (9), Stats., provide as follows:
 51.42 (5) Powers and duties of boards. Subject to this section, the rules promulgated thereunder. and within the limits of state and county appropriations and maximum available funding from other sources, boards shall provide for:
. . . .
 (h) Continuous planning, development and evaluation of programs and services for all population groups; and shall:
. . . .
 7. Enter into contracts to render services to or secure services from other agencies or resources including out-of-state agencies or resources; and
 8. Enter into contracts for the use of any facility as an approved public treatment facility under s. 51.45 for the treatment of alcoholics if the board deems it to be an effective and economical course to follow.
 (i) The submission of a coordinated plan and budget as provided in s. 46.031 (2).
 51.437 (9) Duties of the board. The community developmental disabilities services board shall:
 (a) Establish a community developmental disabilities services program, appoint the director of the program, establish salaries and personnel policies for the program and arrange and promote local financial support for the program. The first step in the establishment of a program shall be the preparation of a local plan which includes an inventory of all existing resources, identifies needed new resources and services and contains a plan for meeting the needs of developmentally disabled individuals based upon the services designated under sub. (1). The plan shall also include the establishment of long-range goals and intermediate-range plans, detailing priorities and estimated *Page 130 
costs and providing for coordination of local services and continuity of care.
 (b) Assist in arranging cooperative working agreements with other health, educational, vocational and welfare services, public or private, and with other related agencies.
 (c) Enter into contracts to provide or secure services from other agencies or resources including out-of-state agencies or resources.
(d) Comply with the state requirements for the program.
The above statutes indicate that a community board enjoys somewhat of an autonomous status. One might reasonably conclude that a community board is insulated from the county board of supervisors as to contracts it chooses to enter into. This conclusion, however, overlooks pertinent amendments of the 1977 legislative session which placed fiscal control of the 51.42/51.437 programs in the county board of supervisors.
Chapter 29, Laws of 1977, amended the introductory paragraph of sec. 51.42 (5), Stats., relating to the powers and duties of the community board by adding the emphasized language as follows: "Subject to this section [and]*, the rules promulgated thereunder, and within the limits of state and countyappropriations and maximum available funding from other sources, boards shall provide for."
Chapter 29, Laws of 1977, also amended sec. 51.437 (11), Stats., relating to program budgeting of developmental disabilities boards which may be established in counties having a population of less than 500,000 by adding the emphasized language as follows: "Boards established under this section shall be funded pursuant to s. 51.42 (8). Plans and budgets shall besubmitted and approved under s. 46.031."
Finally, ch. 27, Laws of 1977, created sec. 46.031 (2) (b)., Stats., which mandates plan and budget approval by the county board of supervisors. Pertinent portions of this statutory paragraph read:
 A coordinated plan and budget shall be submitted to the county board of supervisors or its designated agent for review and preliminary approval for submission to the department. . . . After the department's review and approval of the coordinated plan and *Page 131 
budget, the department shall return the coordinated plan and budget to the county board of supervisors or combination of county boards for its final review and approval.
Thus, the enactments of the 1977 Legislature evince a strong policy of vesting greater fiscal control of human services programs in the county board of supervisors. That control is exercised through the Coordinated Plan and Budget. The express statutory authority of the combined community services board to enter into contracts under sec. 51.42 (5)(h)8., Stats., has not been repealed. Since repeals by implication are not favored in the law, Jendrzejewski v. Fire and Police Commissioners,257 Wis. 536, 538, 44 N.W.2d 270 (1950), it is obvious that said authority remains, but that it is now circumscribed by the Coordinated Plan and Budget under the 1977 legislative enactments.
Once the Coordinated Plan and Budget has been approved by the Department, it becomes a contract under sec. 46.031 (2)(b), Stats., which may be changed if "mutually agreed upon" between the county board and the Department. The role of the combined board is to implement the plan according to the terms and conditions specified in the plan. Where a particular mode of contract making is specified, such as calling for prior authorization on certain types of transactions, the plan must be followed. Conversely, if the plan is silent in this respect, sec.51.42 (5) (h) 7. and 8., Stats., controls, and the combined board may enter into contracts without prior approval of the county board if such contracts are otherwise lawful. As noted above, a county board can change its plan upon mutual agreement with the Department.
Accordingly, the answer to your question depends on the terms specified in the Coordinated Plan and Budget. Assuming the plan is silent as to a specific mode of making contracts, the combined services board has the statutory authority to execute a contract to purchase services without separate or individual authorization of the county board of supervisors.
BCL:WLJ
*
[EDITORS' NOTE: THE TEXT CONTAINED WITHIN THE BRACKETS WAS STRICKEN THROUGH IN THE ORIGINAL TEXT.] *Page 132