JOHN HOGAN, District Attorney Oneida County
You ask whether a tri-county combined 51.42/51.437 board may make cuts in non-emergency services to the residents of a county that does not provide its proportionate share of funding to that board. You state that sufficient funds are available to provide emergency services to persons in all three counties. Apparently, however, the board lacks sufficient funds to continue providing the present level of services through the rest of 1984. *Page 97 
I am of the opinion that a multi-county combined board may make such cuts in services, but that an individual county may not escape its statutory obligation to provide its residents with nonemergency services under sections 51.42(1)(b) and 51.437(4), Stats., by refusing to provide such funding to the combined board.
You state that the combined board has requested the following amounts from its three constituent counties in order to have sufficient operating funds for the balance of 1984:
Forest County 16% $ 53,979 Vilas County 29% $ 97,837 Oneida County 55% $185,552
The Forest County Board of Supervisors has indicated that it will not provide the board with the amount requested.
These 51.42 and 51.437 boards have been combined pursuant to section 59.025(3)(b). Section 51.42(5) provides: "DUTIES OF BOARDS. Within the limits of available state and federal funds and of county funds appropriated to match state funds, boards shall provide for the program needs of persons suffering from mental disabilities, including mental illness, mental retardation, alcoholism or drug abuse, by offering the following [enumerated] services." Section 51.437(9) similarly provides: "DUTIES OF THE BOARD. Within the limits of available state and federal funds and of county funds appropriated to match state funds, the community developmental disabilities services board shall [provide certain enumerated services]."
The autonomy of 51.42 and 51.437 boards was limited by chapter 29, Laws of 1977. By passing such amendments, the Legislature "evince[d] a strong policy of vesting greater fiscal control of human services programs in the county board of supervisors." 69 Op. Att'y Gen. 128, 131 (1980). As amended by chapter 29, Laws of 1977, sections 51.42(5) and 51.437(9) restate the obvious: 51.42
and 51.437 boards may not expend funds in excess of those made available by the county, the state and all other sources. Seegenerally 69 Op. Att'y Gen. 128 (1980). Since a combined board cannot expend funds which it does not have, it is logical to expect the board to cut services if it does not receive funding from a particular county. In this case, Forest County apparently has indicated that it will not provide a proportionate share of funding. Under the circumstances, I am of *Page 98 
the opinion that a multi-county combined board is empowered to cut non-emergency services to residents of that county in order to account for this lack of funding. I express no opinion, however, as to what action the Secretary of the Wisconsin Department of Health and Social Services will take with respect to such an arrangement.
A county which does not provide its proportionate share of funding to a multi-county combined board is still subject to the provisions of section 51.42(1)(b), which provides:
 Responsibility of county government. The county boards of supervisors have the primary responsibility for the well-being, treatment and care of the mentally ill, developmentally disabled, alcoholic and other drug dependent citizens residing within their respective counties and for ensuring that those individuals in need of such emergency services found within their respective counties receive immediate emergency services. County liability for care and services purchased through or provided by a board established under this section shall be based upon the client's county of residence except for emergency services for which liability shall be placed with the county in which the individual is found.
Section 51.42(1)(b) obligates each county board of supervisors to provide care for residents who are mentally ill, developmentally disabled, alcoholic or drug dependent. Section 51.42(1)(b) also obligates each county board of supervisors to provide certain emergency services to these four categories of individuals, even if the individuals are not residents of the county. See 65 Op. Att'y Gen. 49, 52-54 (1976). These obligations exist regardless of whether the matching funds made available by the Department under section 51.42(8) are sufficient to fully reimburse counties for treating these four categories of individuals. See 66 Op. Att'y Gen. 249, 250-52 (1977); 65 Op. Att'y Gen. 49, 53-54 (1976).
You do not indicate whether the funds available to the multicounty combined board are sufficient to provide residents of Forest County with the minimum level of non-emergency services mandated by section 51.42(1)(b). It would be permissible for the county boards of Oneida and Vilas Counties to make appropriations to the combined board in order to provide non-emergency services beyond those minimally required by section 51.42(1)(b) to residents of those counties. However, Forest County may not escape its statutory obligation *Page 99 
to provide non-emergency services to its own residents under section 51.42(1)(b) by refusing to provide sufficient funding to the multi-county combined board.
A multi-county combined board is not an independent agency or body corporate. See OAG 38-82 dated May 20, 1982 (unpublished). But each county that forms such a board is a quasi-municipal corporation which must satisfy its statutory obligation to provide services under section 51.42(1)(b). No county may evade its statutory obligation to provide services under section51.42(1)(b) through the simple expedient of refusing to provide sufficient funding to the multicounty combined board.
In closing, I wish to note that, while section 51.42(4)(b) expressly authorizes counties to form multi-county boards, section 51.42(3)(c) provides: "No grant-in-aid may be made to any combination of counties until the counties have drawn up a detailed contractual agreement, approved by the secretary, setting forth the plans for joint sponsorship." It is somewhat surprising that the Department would approve a contract which does not deal with the funding problems you describe. It is even more surprising that your opinion request makes no mention of and contains no analysis of the contract which must exist between the three counties or of the resolution which apparently created the board. These documents may well affect the legal rights of the respective counties. I suggest that the counties involved carefully review the resolution and the contract and, if necessary, amend the contract to take care of the problems you describe.
BCL:FTC