JAMES J. DUVALL, District Attorney Buffalo County
You ask three questions relating to protective placements under chapter 55, Stats. Several of the issues you have raised are discussed in 65 Op. Att'y Gen. 49 (1976).
Your first question is as follows: "1. What is the definition of `residence' for venue purposes in Chapter 55?"
In my opinion, the definition of residence for venue and other purposes under chapter 55 is physical presence plus intent to remain in a place of fixed habitation.
Section 55.06(3)(c), Stats., which is the venue provision to which you refer, provides that "[a] petition may be filed either in the county of legal settlement or the county of residence of the person to be protected." Section 49.01(8g), in turn, provides as follows: "`Residence' means the voluntary concurrence of physical presence with intent to remain in a place of fixed habitation. Physical presence is prima facie evidence of intent to remain." This section is specifically referred to as the definition of residence in section 55.06(8): "[T]he appropriate board designated under s. 55.02 or an agency designated by it having responsibility for the place of legal residence of the individual as provided in s. 49.01(8g) shall make a recommendation for placement."
In addition, the definition of residence contained in section49.01(8g) is adopted under section 51.01(14) as the definition of residence both for purposes of commitment under section 51.20, and for the purpose of determining county responsibility for provision of services under sections 51.42(1)(b) and 51.437(4)(a) and (c). *Page 104 
With respect to the process of placement in a facility, commitment and protective placement are closely tied together.See generally 65 Op. Att'y Gen. 49 (1976). See also 66 Op. Att'y Gen. 249 (1977). Although section 55.06(3)(c) permits a protective placement petition to be filed in the county of legal settlement, except for the assignment of guardian ad litem fees, "[t]he retention of the references to legal settlement . . . can best be explained as a `legislatively dropped stitch.'" 65 Op. Att'y Gen. at 52. With the exception noted, I reiterate my predecessor's conclusion that "legal settlement determinations were not intended to play a part in the 51.42 and 51.437
programs." 65 Op. Att'y Gen. at 51.
In connection with your first inquiry, you also state the following:
 Individual people have, of their own will, while competent and not pursuant to a court order, moved to certain counties which possess facilities which they find desirable. At times these people then become incompetent and proper subjects for Chapter 55. The counties with such facilities have taken a hard-line, stating that these persons retained "residency" in the county from which they originated despite their voluntary move and have refused Chapter 55 placement or services.
In 65 Op. Att'y Gen. at 52, it was stated that the definition of residency contained in what is now section 49.01(8g) creates a rebuttable presumption with respect to legal residency for purposes of protective placement and commitment. After that opinion was issued, however, the Legislature amended section55.06 so as to specifically cross-reference the definition of residency contained in section 49.01(8g) into the protective placement statutes. See ch. 430, sec. 69, Laws of 1975. By virtue of this amendment, it is my opinion that the definition of residency contained in section 49.01(8g) is now controlling for all purposes with respect to protective placement and commitment. In addition to the statutory amendment, two other factors favor this conclusion.
First, in enacting chapters 51 and 55, it seems likely that the Legislature did not contemplate the occurrence of the type of "facility shopping" which you describe. Second, both sections51.42(1)(b) and 51.437(4)(a) place responsibility upon each county board for providing care and treatment to "citizens residing within its county . . . ." This language indicates that the Legislature also *Page 105 
intended that only one county would be responsible for the provision of services to the individual protectively placed.
Under the circumstances, it might have been preferable if the Legislature had used the term domicile, rather than residence, in chapters 51 and 55. See generally 61 Op. Att'y Gen. 245 (1972).Also see Estate of Daniels, 53 Wis.2d 611, 614-15,193 N.W.2d 847 (1972). Some concepts relevant to the law of domicile are contained in section 49.01(8r), which permits a guardian to make choices as to residency if the ward is incompetent, and in section 51.22(4), which provides that if placement outside the county is authorized by the 51.42 board, "the placement does not transfer the patient's legal residence to the county of the facility's location while such patient is under commitment." Even though concepts related to the law of domicile are relevant to a determination of residency under section 49.01(8g), in certain circumstances it may be fairly easy for an individual to change his or her legal residence within the meaning of that statute.
Although your factual description is very general in nature, given the definition of residence selected by the Legislature, in situations where the subject of the protective placement is physically present, intent to remain in a place of fixed habitation is the controlling factor in determining residence.Compare Miller v. Sovereign Camp W. O. W., 140 Wis. 505, 508,122 N.W. 1126 (1909). In such situations, if the individual intends to remain in a place of fixed habitation within the county where he or she is physically present, it is my opinion that that county may not refuse to provide placement or services or attempt to assign financial responsibility for such placement or services to another county.
In connection with your second question, you state that "[other] counties have maintained Chapter 55 actions based on `residence' in the venue section of Chapter 55, but then found them nonresidents for placement purposes and either placed them to the board of another county or placed them to their own board but assigned the cost of providing care to another county." You then pose the following question: "2. May the court placing the individual under Chapter 55 either place such individual through another county's board or, in the alternative, place the individual through its own [county's] board, but assign financial responsibility for such placement to another county?" *Page 106 
It is my opinion that a court may place an individual through another county's board, but that any such placement order is not binding on another county and may be collaterally attacked if that county did not receive notice and an opportunity to be heard. However, it is also my opinion that the assignment of financial responsibility between counties by the court is not contemplated in protective placement proceedings.
Preliminarily, it should be noted that the venue provision contained in section 55.06(3)(c) is not jurisdictional in nature.Compare Shopper Advertiser v. Department of Rev.,117 Wis.2d 223, 344 N.W.2d 115 (1984). The filing of a protective placement petition in a county other than the county of legal residence under section 49.01(8g), therefore, does not prevent a court from issuing a final order concerning protective placement. In its final order, the court "shall order placement through the appropriate board designated under s. 55.02 or an agency designated by it." Sec. 55.06(9)(a), Stats. Nothing in this statute, which governs the contents of the court's final order, requires any specific assignment of financial responsibility between counties.
The court's final order may nevertheless have certain consequences with respect to the assignment of financial responsibility for non-emergency services. Section 55.06(13) provides that "[t]he appropriate board shall be charged for the cost of care and custody resulting from placement under this section." The meaning of the phrase "appropriate board" is not entirely clear. However, section 51.22(1) unambiguously indicates that final orders under chapter 51, and, by inference, under chapter 55, should be directed to the county of residence: "[a]ny person committed under this chapter shall be committed to the county department under s. 51.42 or 51.437 serving the person's county of residence . . . ." Any finding as to residency has implications with respect to financial liability under section55.06(13).
In 65 Op. Att'y Gen. at 52, 53, it was stated:
 In order to comply with the letter and spirit of sec. 51.002 and the entire mental health act as revised, information concerning the person's place of residence should be procured at the earliest possible time . . . .
. . . . *Page 107 
 In all commitments or admissions, every effort should be made to resolve differences of opinion relative to an applicant's place of residence as soon as possible.
If time is not of the essence and it appears certain that the subject of the protective placement petition possesses residence in another county, the preferred course of action would be to transfer venue to that county. Compare Shopper Advertiser,117 Wis.2d at 231-33. Unfortunately, "[i]t is often difficult to determine residence of an individual who requires emergency care." 65 Op. Att'y Gen. at 52. In such difficult cases, the court issuing a protective placement order has two options. Where little or no information concerning residency is available, the court may order placement to the designated department in its county under section 55.02 that has responsibility for the provision of the needed services and withhold making any finding as to residency. In such circumstances, absent the existence of a cooperative agreement, that county may then seek reimbursement through legal channels from the county of residence.
In rare cases, a change of venue may not be feasible, and an inter-county dispute as to residency may have to be resolved prior to the issuance of the court's final order. Absent future legislative direction to the contrary, in such situations those counties which might potentially be affected by the court's residency finding should be provided with notice and an opportunity to be heard pursuant to section 55.06(5). See, e.g.,Fuentes v. Shevin, 407 U.S. 67, 80 (1972). But see, ColumbiaCounty v. Wisconsin Retirement Fund, 17 Wis.2d 310,116 N.W.2d 142 (1962). In cases where that is not done, the court's final order is not binding upon any county that did not receive notice and an opportunity to be heard, and could be collaterally attacked either in a subsequent timely legal proceeding between counties to determine financial responsibility or by moving to vacate portions of the court's final order. See Wengerd v.Rinehart, 114 Wis.2d 575, 587-88, 338 N.W.2d 861 (Ct.App. 1983). Compare Comstock v. Boyle, 134 Wis. 613, 114 N.W. 1110
(1908).
To alleviate the potential problems posed by the last of these situations, it has been "suggest[ed] to the Department of Health and Social Services that a need exists for prompt legislative action to establish a method for resolving such disputes." 65 Op. Att'y Gen. at 53. To date, there has been no such legislation. The department *Page 108 
also has not attempted to address this problem pursuant to its rulemaking powers under sections 51.42(7)(b)8. and 51.437(16).
On December 1, 1982, the department did, however, issue the enclosed policy memorandum concerning residency for the purpose of funding human services. The memorandum addresses many situations where residency disputes might arise and also provides for a mechanism for resolving such disputes. The provisions of this memorandum, which does not have the force of law, have been voluntarily followed by a number of counties. Your county may wish to do the same.
Your third question is as follows: "3. If the placing court has authority to assign financial responsibility, what county is responsible for the cost of placement, county of residence, county of legal settlement, or whatever county initially places the individual?"
Except in the case of emergency services, it is my opinion that the county of residence is responsible for the cost of placement.
Section 51.42(1)(b) provides, in part, as follows:
 County liability. The county board of supervisors has the primary responsibility for the well-being, treatment and care of the mentally ill, developmentally disabled, alcoholic and other drug dependent citizens residing within its county and for ensuring that those individuals in need of such emergency services found within its county receive immediate emergency services. County liability for care and services purchased through or provided by a county department of community programs established under this section shall be based upon the client's county of residence except for emergency services for which liability shall be placed with the county in which the individual is found. For the purpose of establishing county liability, "emergency services" includes those services provided under the authority of s. 51.15, 51.45(11)(a) or (b) or (12), 55.05(4) or 55.06(11)(a) for not more than 72 hours.
Similarly, section 51.437(4)(c) provides that "[c]ounty liability for care and services purchased through or provided by a county department of developmental disabilities services established under this section shall be based upon the client's county of residence . . . ." Despite its placement in chapter 51, this latter provision refers generally to services provided under chapter 55. See, e.g., sec. 55.02, Stats. *Page 109 
Since legal settlement determinations were not intended to play a part in the 51.42 and 51.437 programs and since there is a statutory seventy-two-hour limitation on liability for emergency services under section 51.42(1)(b) for individuals found within a county, neither the county of legal settlement nor the county where the petition is filed appears to be a workable definition of "residence" as that term is employed in sections 51.42(1)(b) and 51.437(4)(a). It is therefore my opinion that, except in the case of emergency services, legal residency as defined in section49.01(8g) is also controlling for the purpose of assigning financial liability between counties for the costs of protective placement or commitment.
DJH:FTC *Page 110